UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JUAN DAVILA**, <br><br> Plaintiff, <br><br> v. <br><br> **ALEJANDRO MAYORKAS, SECRETARY, US DEPARTMENT OF HOMELAND SECURITY**, <br><br> Defendant. | Case No. 22-cv-357 (CRC) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Juan Davila has sued the Secretary of the U.S. Department of Homeland Security ("DHS") for alleged violations of Title VII of the Civil Rights Act of 1964 during his twelve-year tenure as an agent with DHS's Office of Inspector General ("OIG"). Following a career as a Border Patrol officer, Davila began working in OIG's San Diego Field Office in 2009. In 2016, Davila was detailed to OIG's Washington, D.C. headquarters, where he later served as the office's National Training and Firearms Coordinator. Davila held that position until he retired in September 2021. Upon his retirement, Davila immediately rejoined OIG as a "rehired annuitant" in its Tucson, Arizona Field Office. He was terminated from that position just over a month later, in November 2021.

Davila, who is Mexican-American, alleges that he experienced unlawful employment practices at virtually every stop of his OIG career. His complaint asserts three claims: race and national origin discrimination, retaliation, and hostile work environment. The claims are based on an overlapping collection of acts allegedly taken by Davila's supervisors and other agency personnel. The Court will provide additional factual background in its discussion of particular claims and allegations below. In sum, however, Davila alleges that:

(1) In 2010, a supervising agent in the San Diego Field Office uttered a racial slur against him, outside of his presence (Am. Compl. ¶¶ 10–11);

(2) In 2013, a different agent erroneously accused him of harboring an undocumented person at his home, who happened to be his wife (Am. Compl. ¶ 13);

(3) In 2016, after Davila had engaged in protected EEO activity, the same supervising agent who allegedly uttered the slur stared at him aggressively, instructed Davila's immediate supervisor to "keep [Davila]on a short leash," and threatened to lower Davila's performance rating and cancel his upcoming detail to OIG headquarters (Am. Compl. ¶¶ 17–19, 24) (brackets in original).

(4) In October 2020, OIG removed training- and firearms-related duties from his position description, which he claims amounted to a material reassignment of his duties (Am. Compl. ¶¶ 29–32);

(5) In March 2021, OIG passed him over for two other "rehired annuitant" positions for which he had applied before landing the Tucson position (Am. Compl. ¶¶ 34–38); and

(6) In November 2021, OIG wrongfully terminated him from his position in Tucson based on unsupported violations of agency policies (Am. Compl. ¶ 46).

DHS has moved for partial summary judgment on Davila's discrimination and retaliation claims to the extent they are based on his March 2021 non-selection for the two rehired annuitant positions and his November 2021 termination from the position in Tucson.[1] The agency argues that summary judgment is appropriate on both claims because Davila failed to exhaust them administratively. DHS also moves to dismiss Davila's termination claim under Federal Rule of

---

[1] While these events are not pled as separate "claims," for ease of reading the Court will refer to them as the "non-selection claim" and "termination claim."

Civil Procedure 12(b)(3) for improper venue. Finally, the agency moves to dismiss the remainder of Davila's complaint under Rule 12(b)(6) for failure to state a claim.[2]

As explained further below, the Court will grant summary judgment for DHS on Davila's non-selection and termination claims because he failed to exhaust administrative remedies. Having granted summary judgment on the termination claim, the Court need not decide the agency's venue challenge. The Court will grant DHS's Rule 12(b)(6) motion in part and deny it in part. Davila has not plausibly alleged discrimination or retaliation based on the supervisory agent's alleged stares, threat to alter Davila's performance review, or instruction to intensify Davila's supervision. Davila may proceed to discovery, however, on his discrimination and retaliation claims to the extent they are based the allegations that his training and firearm-related duties were reassigned and that he was threatened with termination. Lastly, the Court will dismiss Davila's hostile work environment claim in its entirety because the alleged supporting conduct is neither severe nor pervasive enough to state a claim in this circuit.

## I. Motion for Partial Summary Judgment Due to Failure to Administratively Exhaust

DHS moves for summary judgment on Davila's non-selection and termination claims on grounds that he failed to administratively exhaust those claims as required under Title VII. Concurring, the Court will grant summary judgment for DHS on both claims.[3]

---

[2] A few days before the November 17, 2022 hearing on DHS's motion for partial summary judgment and dismissal—and almost five months after that motion was filed—Davila sought leave to amend his complaint. While inopportunely timed, DHS acknowledged at the hearing that it was not prejudiced by the amendment. Mot. Hr'g at 16. Accordingly, the Court will grant Davila's motion to amend the complaint and review DHS's pending motion in light of the amended complaint. For purposes of assessing the agency's motion to dismiss, the Court assumes the truth of all well-pled allegations in the complaint. See Sissel v. U.S. Dep't of Health & Hum. Servs., 760 F.3d 1, 4 (D.C. Cir. 2014).

[3] Davila filed a motion urging the Court to deny or defer summary judgment until after discovery. Pl.'s Mot. to Den. or Defer Summ. J. Because Davila has not specified how additional discovery would change the outcome, Davila's motion is denied.

A. <u>Legal Standard</u>

Summary judgment is appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court must "examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to the nonmoving party." <u>Robinson v. Pezzat</u>, 818 F.3d 1, 8 (D.C. Cir. 2016) (internal quotation omitted).

B. <u>Title VII Exhaustion Requirements</u>

Title VII requires a plaintiff to administratively exhaust his claims before bringing them in district court. <u>See</u> 42 U.S.C. § 2000e-16. "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." <u>Brown v. Marsh</u>, 777 F.2d 8, 14 (D.C. Cir. 1985). There are several specific time requirements. First, an aggrieved federal employee must notify an agency EEO counselor within 45 days of the allegedly discriminatory incident. 29 C.F.R. § 1614.105(a) (2009). If discussions with the counselor do not resolve the issue, the counselor must inform the employee of his right to file a complaint with the agency. <u>Id.</u> § 1614.105(d). The employee must file a formal agency complaint within fifteen days of receiving such notice. <u>Id.</u> § 1614.106(b). The agency then has 180 days to complete an investigation of the complaint. <u>Id.</u> § 1614.108(e). The employee may proceed with an action in district court after more than 180 days have passed since the employee's filing of an administrative complaint with the agency and no final action has been taken. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(b). If the employee runs afoul of this timeline, the discrete discriminatory act is "not actionable." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113

(2002). That said, administrative exhaustion is not jurisdictional and is subject to waiver, estoppel, and equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

C. Analysis

Davila failed to exhaust his non-selection claim because he did not contact an EEO counselor within 45 days of learning about his non-selection. And he failed to exhaust his termination claim because he prematurely filed this suit before the agency could issue a final action or the 180-day investigative period concluded. The details follow.

1. *Non-Selection Claim*

DHS apparently employs some retired agents as "rehired annuitants." Davila's non-selection claim arises from his February 2021 attempt to obtain one such position with OIG in either its Tucson or San Diego Field Office. Am. Compl. ¶ 34. Davila inquired about the positions in February 2021 and was informed on March 22, 2021 that neither was still available. Id. ¶¶ 34, 37.[4] Davila further alleges that multiple white men were brought on as rehired annuitants "in the western U.S.," although he stops short of alleging that the positions he sought went to white men. Am. Compl. ¶ 38. In any case, on May 18, 2021—57 days after learning that he was not selected—Davila contacted an agency EEO counselor to amend his complaint with the non-selection charge. Pl.'s Opp'n to Def.'s Mot. Summ. J., Ex. 2 at 1.

---

[4] Contrary to his original complaint and his since-withdrawn first amended complaint, Davila's new amended complaint identifies April 28, 2021 as the day he learned that the positions were no longer available. Compare Compl. ¶ 26, ECF No. 1 ("On or about March 22, 2021, DHS Deputy Assistant Inspector General for Investigations James Izzard informed Davila that the position was no longer available and there were no more rehired annuitant positions available in the western U.S.") and Withdrawn Am. Compl. ¶ 26, ECF No. 17-1 (same) with Am. Compl. ¶ 37 ("On or about April 28, 2021, . . . Izzard informed Davila that the position was no longer available and there were no more rehired annuitant positions available in the western U.S.") When asked at the hearing, Davila's counsel did not attempt to explain the change, stating that the March 22nd date was "the most correct date to go by" for purposes of calculating exhaustion. Mot. Hr'g at 33–34.

Failure to meet Title VII's 45-day notification deadline can result in dismissal of a claim as time-barred. Grzadzinski v. Garland, No. 20-1441 (JEB), 2022 WL 1154661, at *4–5 (D.D.C. Apr. 19, 2022) (dismissing claim because plaintiff failed to initiate contact with an EEO counselor within the requisite 45-day timeframe). The parties do not dispute that Davila notified the relevant EEO counselor outside the 45-day timeframe. Accordingly, DHS is entitled to summary judgment on Davila's non-selection claim for failure to exhaust.

Resisting that result, Davila asserts that DHS waived its exhaustion argument by accepting receipt of his amendment and including exhibits in its subsequent Report of Investigation that reference the non-selection. Not so. In this circuit, "agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint." Bowden v. United States, 106 F.3d 433, 438 (D.C. Cir. 1997). Waiver only occurs when a decision is issued on the merits of the claim. Id. Here, the Report of Investigation did not include the March 2021 non-selection incident among the potential violations that were investigated, nor did it reach a decision on the merits of that claim. Pl.'s Opp'n to Def.'s Mot. Summ. J., Ex. 3 at 2. Accordingly, no waiver occurred.

Davila also contends that the non-selection claim should be allowed to proceed because it relates back to an October 2020 claim that his duties were reassigned in violation of Title VII. The Court need not consider Davila's relation-based argument because he failed to raise it in his briefs and only broached it during the motions hearing. See, e.g., Interstate Fire & Cas. Co. v. Wash. Hosp. Ctr. Corp., 917 F. Supp. 2d 87, 92 (D.D.C. 2013) (treating arguments not raised during summary judgment briefing as waived).

Even so, Davila is correct on the law but mistaken in its application. Exhausted claims can save "like or related" claims only when the unexhausted claims "could have reasonably been expected to grow out of" the original claims. Weber v. Battista, 494 F.3d 179, 183–84 (D.C. Cir.

6

2007) (internal quotations omitted); see also Bell v. Donley, 724 F. Supp. 2d 1, 12 (D.D.C. 2010) (holding that "four discrete, separate incidents, with little in common other than the fact that they are all allegedly violations of Title VII" are not sufficiently related for purposes of excusing failure to exhaust); Dage v. Johnson, 537 F. Supp. 2d 43, 57 (D.D.C. 2008) (holding that plaintiff's EEO complaint could not save his unexhausted federal action which was "much broader" than his EEO complaint). Davila offers no convincing rationale for how a claim based on his non-selection in March 2021 could reasonably be expected to arise from an alleged reassignment of duties nearly a half year prior.

    2. *Termination Claim*

DHS next moves for summary judgment on all claims related to Davila's termination because he filed his suit well before the conclusion of the 180-day administrative exhaustion period or any final agency decision on his wrongful termination EEO complaint. Davila was terminated from his Arizona-based rehired annuitant position in November 2021, just over a month after he retired from his DHS headquarters position and assumed his new role. Am. Compl. ¶¶ 41–46. In the letter terminating Davila, Assistant Special Agent in Charge Joseph C. Kenney cited as justification for the decision Davila's violation of two agency policies: (1) parking his government vehicle outside the authorized radius from his duty station without a waiver and (2) failing to "report to qualify at the [shooting] range with proper notification to [his] supervisory chain." Pl.'s Opp'n. to Def.'s Mot. Dismiss, Ex. 1. Davila insists those justifications are pretextual and that he actually was fired because of his race and as reprisal for his prior EEO activity. After unsuccessfully attempting to amend his prior EEO complaint to include his termination, Davila filed a new EEO complaint on January 25, 2022 and followed with this action about two weeks later. Am. Compl. ¶ 7.

Davila's federal suit runs afoul of Title VII's required 180-day waiting period. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(b). In general, courts apply the deadlines in § 2000e-16(c) strictly and "will dismiss a suit for missing the deadline by even one day." Galloway v. Watt, 185 F. Supp. 3d 130, 133 (D.D.C. 2016) (Cooper, J.) (quoting Woodruff v. Peters, 482 F.3d 521, 525 (D.C. Cir. 2007)). Davila does not dispute that he filed this suit prematurely. Instead, he suggests that his termination claim can proceed because he amended his complaint after the agency issued a final decision on the claim. Pl.'s Opp'n to Def.'s Mot. Summ. J. at 10; Am. Compl. ¶ 7. But this "file-first, amend-later" approach cannot be used to sidestep Title VII's exhaustion requirements. As the D.C. Circuit held in Murthy v. Vilsack, "the filing of an amended complaint after the 180-day period expired cannot cure the failure to exhaust." 609 F.3d 460, 465 (D.C. Cir. 2010) ("[A]llowing Murthy to cure his failure to exhaust administrative remedies by amending his complaint would contravene EEOC's investigative duty and undermine Congress' policy of encouraging informal resolution up to the 180th day." (internal quotation omitted)); Maybank v. Speer, 251 F. Supp. 3d 204, 207 (D.D.C. 2017) (dismissing Title VII complaint for failure to exhaust and noting that plaintiff could not cure the defect by amending his complaint). Davila points out that Murthy involved a complaint filed with the Equal Employment Opportunity Commission, rather than an agency EEO office, but that distinction misses the point. Pl.'s Opp'n to Def.'s Mot. Summ. J. at 15–16. Regardless of the venue in which they arise, permitting amended complaints to cure exhaustion defects would undermine the "careful blend of administrative and judicial enforcement powers" established to resolve Title VII complaints efficiently and effectively. Murthy, 609 F.3d at 465 (quoting Brown v. Gen. Servs. Admin., 425 U.S. 820, 832–33 (1976)). Filing a judicial complaint just weeks after an administrative complaint, as Davila did here, squarely implicates the concerns expressed by the D.C. Circuit in Murthy.

Nor has Davila shown that his termination claim is reasonably related to the claims in his complaint that he did properly exhaust. Davila's termination claim involves a different job in a different state, and an adverse action taken by a different agency official. Because the termination claim shares "little factual similarity" with the properly exhausted claims, they cannot be considered related for purposes of exhaustion. See Bell, 724 F. Supp. 2d at 12.

Because the undisputed facts show that Davila failed to exhaust his termination claim, DHS is entitled to summary judgment on that claim.[5]

## II. Motion to Dismiss for Failure to State a Claim

With the unexhausted claims out of the picture, the Court turns next to DHS's motion to dismiss what remains of Davila's complaint for failure to state a claim. To recap: Davila alleges that the purported reassignment of his duties constituted discrimination. He further alleges that the reassignment of his duties, along with his supervisor's aggressive stares, unconsummated threats of both termination and an adverse performance review, and recommendation that Davila

---

[5] DHS also moved to dismiss Davila's termination claim for improper venue. Def.'s Mot. Summ. J. & Mot. Dismiss at 8–10. The burden is on the plaintiff to establish that venue is proper. 14 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3826 (4th ed. 2020); Walker v. Mead, No. 21-276 (JEB), 2021 WL 2809529, at *1 (D.D.C. July 6, 2021). To support his choice of venue in this district, Davila points out that his termination letter was issued from OIG headquarters' address in Washington, D.C. and posits that D.C.-based officials were involved in the decision. Pl.'s Opp'n to Mot. Dismiss at 9–13 & Ex. 1. Yet, the record contains an agency declaration indicating that: (1) the official who signed the letter, Joseph Keeney, works in Virginia; (2) the other individuals Davila suggests were involved did not play any role in the decision; and (3) Davila was terminated from his Arizona-based position for conduct that occurred in Arizona. Id., Ex. 1 at 1–2. At best, Davila may have been entitled to limited discovery as to whether D.C.-based personnel were significantly involved in his termination. See Slaby v. Holder, 901 F. Supp. 2d 129, 133–34 (D.D.C. 2012) (holding that the mere involvement of D.C. personnel in a termination decision was not sufficient to make D.C. the proper venue). As the termination claim has already been dismissed for failure to exhaust, however, the Court need not decide the venue issue.

be subject to close supervision all constitute retaliation. Finally, Davila alleges that all those actions, and a few more, created a hostile work environment.

As explained below, the Court will grant DHS's motion in part, but will permit Davila to continue pursuing his discrimination claim as it relates to the alleged reassignment of his duties, and his retaliation claim as it relates to the reassignment of duties and the alleged threats of termination. The Court will dismiss the hostile work environment claim in its entirety.

A. Legal Standard:

In analyzing a Rule 12(b)(6) motion, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In deciding the motion, the Court "must take all of the factual allegations in the complaint as true[.]" Id. It must also "constru[e] the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006). That said, "conclusory statements" and "[t]hreadbare recitals of the elements" do not suffice. Ashcroft, 556 U.S. at 678.

B. Discrimination

What remains of Davila's discrimination claim arises from an October 2020 notice he received in which, Davila claims, "all the roles and responsibilities previously listed in his original position description related to training and firearms were deleted without explanation." Am. Compl. ¶¶ 29–30. Davila alleges that training-related duties previously constituted around 95% of his work and that he believed he was no longer authorized to perform that work after the change. Id. at ¶ 32. Davila further alleges that a white agent in a similar position did not have

his position description changed. Id. at ¶ 31. About seven months after the change, in May 2021, Davila's position description was corrected to reflect his training and firearm duties. Id. at ¶ 39.

### 1. Legal Standard

To plead a viable discrimination claim under Title VII, a plaintiff must allege that he suffered an "adverse employment action" because of his race, color, religion, sex, or national origin. Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The D.C. Circuit, sitting en banc, recently overturned prior circuit precedent holding that a Title VII discrimination plaintiff must show that the challenged employment action resulted in "objectively tangible harm." Chambers v. District of Columbia, 35 F.4th 870, 872 (D.C. Cir. 2022) (en banc). Now, a plaintiff in this circuit need only show that he was discriminated against with respect to the "terms, conditions, or privileges of employment." Id. at 874–75 (quoting 42 U.S.C. § 2000(e)-2(a)(1)). The Chambers court declined to further define "terms, conditions, or privileges of employment" and reserved judgment on whether Title VII includes an exception for de minimis employer conduct. Id. at 875.

### 2. Analysis

Davila has stated a viable discrimination claim because the alleged adjustments to his duties—particularly duties that he says constitute the vast bulk of his position—could plausibly affect the terms, conditions, and privileges of his employment. Davila further alleges that the change was motivated by his race and national origin and that a white counterpart did not experience the same changes. Am. Compl. ¶¶ 31, 52–53. At this stage, nothing further is needed.

DHS retorts that Davila did not suffer an adverse employment action because the change was not significant and only affected his position description, not his actual duties. Def.'s Mot.

11

Summ. J. & Mot. Dismiss at 14–16.  But as Chambers observed, Title VII reaches even "garden-variety" discrimination with respect to the "terms, conditions, or privileges of employment."  35 F.4th at 879.  The question is not whether the discrimination was "significant," but whether it affected the terms, privileges, and conditions of Davila's employment.  The Court cannot say, drawing all reasonable inferences in Davila's favor, that the alleged changes to his job description did not have such an effect.  And DHS's assertion that the temporary change to the position description did not affect his actual work is a factual argument not appropriate for this motion.  The agency will have an opportunity to establish that fact in discovery.

    C.  Retaliation

In addition to the reassignment allegation discussed above, Davila also alleges that he was retaliated against when a senior agent threatened to terminate him and lower his performance rating, stared at him aggressively, and advised Davila's supervisor to keep him "on a short leash."  Am. Compl. ¶¶ 17–19, 24; see also Pl.'s Opp'n to Def.'s Mot. Dismiss at 23–25.  Some additional context is necessary.

Davila alleges that in 2016, a supervisor in OIG's San Diego field office, James Beauchamp, told him that he had no future with the agency.  Am. Compl. ¶ 17.  As Davila tells it, Beauchamp made the statement after Davila reported a fellow agent—whom Davila describes as a "protégé" of Beauchamp—for issuing Davila a confidential informant payment that was fifteen dollars less than documented.  Id. ¶¶ 16–17.  Believing Beauchamp's reaction to be racially motivated, Davila reported the incident to his supervisors.  Id.  A month later, Beauchamp purportedly told Davila that he would terminate his detail to D.C. headquarters and replace him with the agent Davila accused of shorting him on the informant payment.  That threat apparently did not materialize, and Davila remained in his position.  Id. ¶ 18.

A few months later, however, Beauchamp allegedly threatened to lower Davila's performance rating.  Id. ¶ 19.  Davila also claims that Beauchamp instructed a subordinate to inquire with Davila's supervisor about downgrading Davila's performance rating.  That supervisor purportedly responded that Davila's performance did not merit a downgrade, and no adjustment occurred.  Id.

In June 2020, Davila provided evidence and agreed to testify in an employment discrimination case brought by another supervisor against Beauchamp, including about Beauchamp's threats surrounding the purportedly missing informant funds.  Id. ¶ 23.  Davila further claims that shortly after he provided that evidence, Beauchamp stared at him "in an aggressive and hostile manner for an extended period of time on two separate occasions" while they were the only employees in the office.  Id. ¶ 24.  Davila reported the incident, which was investigated.  As part of the investigation, Davila says he learned that Beauchamp had instructed one of Davila's supervisors to "keep [Davila] on a short leash" and to scrutinize Davila's work more critically than that of his colleagues.  Id.  A few weeks later, Davila filed his first discrimination and harassment complaint with DHS's EEO officer.  Id. ¶ 25.  And a few months after that, Davila's position description was altered, as recounted above.  Id. ¶¶ 29–30.

        1. *Legal Standard*

To state a claim of unlawful retaliation under Title VII, a plaintiff must allege that his employer took a materially adverse action against him because he engaged in statutorily protected activity.  Baloch v. Kempthorne, 550 F.3d 1191, 1198 (D.C. Cir. 2008).  A "materially adverse action" in the context of a retaliation claim is an action that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation omitted).  The action must be "significant."  Id.  Mere "petty slights, minor annoyances, and simple lack of good manners"

13

do not suffice.  Id.  Unlike in a discrimination claim, the materially adverse action need not affect the "terms, conditions, or privileges" of employment.  Baloch, 550 F.3d at 1198.

### 2. *Analysis*

DHS disputes whether the alleged conduct was sufficiently material to constitute retaliation and whether a causal link exists between the alleged acts and Davila's protected activity.  Davila's allegations regarding threats of termination and the reassignment of his duties survive those challenges.  Those involving Beauchamp staring at him, threatening to adjust his performance review, and telling Davila's supervisor to scrutinize his work more closely do not.

Beginning with the former, whether a threat of termination constitutes retaliation is a factual inquiry that requires review of the context in which the threat was delivered.  See Gaujacq v. EDF, Inc., 601 F.3d 565, 578 (D.C. Cir. 2010) (In assessing an employer's threat of termination, "[the] employer's words and other actions must be considered in context to determine whether they would 'dissuade a reasonable worker' from filing a claim and thus result in actionable retaliation[.]"); Ali v. D.C. Gov't, 810 F. Supp. 2d 78, 89 (D.D.C. 2011) ("A credible threat of termination might well dissuade a reasonable employee from pursuing a charge of discrimination.").  Without discovery, the Court cannot conduct the necessary factual inquiry to determine whether Beauchamp's alleged threats to harm Davila's career were materially adverse.

As for Davila's reassignment claim, a reassignment of duties may be materially adverse when it results in a "significant change," such as a reduction in supervisory or programmatic responsibility.  See Geleta v. Gray, 645 F.3d 408, 412 (D.C. Cir. 2011) (affirming that a reasonable jury could conclude that an employee who lost his supervisory role over twenty employees and was reassigned to predominantly bureaucratic tasks could have been dissuaded from engaging in protected EEO activity); Harbour v. Univ. Club of Wash., No. 21-cv-2047

14

(CRC), 2022 WL 2304033, at *6–7 (D.D.C. June 27, 2022) (denying a motion to dismiss a retaliation claim based on an employer placing a supervisor above the plaintiff, moving the plaintiff's former reports to another department, and hiring two other employees to do the plaintiff's work). Here, it is plausible that a reassignment of duties that allegedly stripped Davila of 95% of his responsibilities could be a significant change. As noted above, DHS disputes that the temporary change to Davila's job description resulted in any change in his actual duties. That may well be so. At this stage, however, the Court cannot say that the alleged reassignment was not significant enough to dissuade an employee from engaging in protected activity.

Davila's other allegations do not meet that standard. An unconsummated threat to lower a performance review is not sufficient to constitute a materially adverse employment action. Circuit precedent establishes that an actual negative performance review can sustain a retaliation claim if it resulted in some financial harm. See Baloch, 550 F.3d at 1199; Weber, 494 F.3d at 185–86; Burke v. Gould, 286 F.3d 513, 522 (D.C. Cir. 2002). An unconsummated threat to lower a performance review, however, does not result in a financial loss and thus is not sufficiently adverse to support a retaliation claim.

So too with Davila's claims about Beauchamp's alleged aggressive staring and suggestions of increased supervision. A material adverse action, even for retaliation claims, must be significant, not just a "petty slight." White, 548 U.S. at 68. Aggressively staring at an employee does not suffice. Nor does the allegation that Beauchamp suggested that a supervisor monitor Davila more closely. Suggesting increased supervision, without more, could not plausibly deter an employee from engaging in protected activity. Thus, only the retaliation claims arising from the alleged reassignment of duties and Beauchamp's threats to terminate Davila constitute sufficiently adverse employment actions.

15

Moving to causation, DHS is incorrect that Davila has failed to allege a causal connection between the allegedly adverse actions and his protected activity. Temporal proximity can serve as the basis for causality, so long as the relevant events are "very close" in time. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). DHS insists that Davila's retaliation claims lack a causal link between "Davila's alleged 2016 protected activity" and the alleged adverse actions that "occurred years later." Def.'s Reply at 9. But that argument ignores more recent protected activity that Davila engaged in shortly before the conduct at issue: he reported Beauchamp for discriminatory conduct a month before Beauchamp allegedly threatened him, and he filed an EEO discrimination complaint against Beauchamp only a few months before his job duties were allegedly reassigned. Am. Compl. ¶¶ 17–18, 25. These allegations are sufficient to plausibly establish a causal connection between Davila's protected activity and the purported retaliatory acts.[6]

Accordingly, Davila will be permitted to pursue his retaliation claim as it relates to the alleged threats of termination and the reassignment of his duties. The rest of the retaliation claim will be dismissed.

D. Hostile Work Environment

Finally, Davila alleges that all of the actions discussed above also created a hostile work environment in violation of Title VII. He adds to the mix a 2010 incident in which Beauchamp allegedly slurred Mexican-American agents generally and a 2013 incident in which another OIG

---

[6] Although DHS cites to Clark Cnty., 532 U.S. at 273–74, where the Supreme Court favorably cited circuit opinions that held that a three-month period between the protected activity and adverse employment action could negate a causal connection, "neither the Supreme Court nor [the D.C. Circuit] has established a bright-line three-month rule." Hamilton v. Geithner, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012). Accordingly, the three-month period between Davila's July 2020 EEO complaint against Beauchamp and the changes to his job description in October 2020 could potentially support a finding of causation. Am. Compl. ¶¶ 25, 29.

agent reported Davila for harboring an undocumented individual in his home. Am. Compl. ¶¶ 11, 13; Pl.'s Opp'n. to Mot. Dismiss at 17.

Because the alleged conduct is neither severe nor pervasive enough to meet the high standard for a hostile work environment, Davila's claim is dismissed.

### 1. Legal Standard

A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (cleaned up). To determine whether such an environment exists, the Court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. This standard is demanding. Title VII is not intended to function as a "general civility code" policing "the ordinary tribulations of the workplace." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citations omitted).

### 2. Analysis

The conduct Davila alleges is neither severe nor pervasive enough to constitute a hostile work environment and courts in this district have rejected claims based on similar conduct. As DHS notes, courts in this district have consistently dismissed hostile work environment claims involving only "work-related actions by supervisors." See Munro v. LaHood, 839 F. Supp. 2d 354, 266 (D.D.C. 2012); Wade v. District of Columbia, 780 F. Supp. 2d 1, 19 (D.D.C. 2011); see also, Moore v. U.S. Dep't of State, 351 F. Supp. 3d 76, 92 (D.D.C. 2019) (plaintiff's "various performance- and promotion-related allegations were not intimidating or offensive enough to be considered harassment"); Jimenez v. McAleenan, 395 F. Supp. 3d 22, 36-37 (D.D.C. 2019)

(Cooper, J.) (close monitoring of work, "impossible" deadlines, lowered performance evaluations, denial of training, and criticism were not severe); Aldrich v. Burwell, 197 F. Supp. 3d 124, 137 (D.D.C. 2016) (undesirable office move, reprimand, suspensions, and leave restriction not sufficiently severe or offensive to create an abusive environment); Crews v. Carson, No. 19-cv-3538 (CRC), 2020 WL 12948520, at *5-7 (D.D.C. Oct. 2020) (Cooper, J.) (low performance reviews, unfair scrutiny, interference with management of subordinates, a letter of reprimand and disciplinary proceedings stemming from the reprimand are all insufficient to state a claim); Houston v. SecTek, Inc., 680 F. Supp. 2d 215, 225 (D.D.C. 2010) (undesirable job assignments, modified job functions, and unprofessional treatment were not sufficient to establish a discriminatory hostile work environment); Allen v. Napolitano, 774 F. Supp. 2d 186, 206 (D.D.C. 2011) ("performance reviews and non-selection for a position are insufficiently severe to support a hostile work environment claim"); Na'im v. Rice, 577 F. Supp. 2d 361, 377 (D.D.C. 2008) (plaintiff's low performance ratings and non-selection for a position did not alone constitute a hostile work environment).

In opposition, Davila directs the Court to Wise v. Ferriero, where the court declined to dismiss a hostile work environment claim comprised of some similar allegations. 842 F. Supp. 2d 120 (D.D.C. 2012). But the conduct in Wise was more severe: a supervisor directed a racial epithet directly at the plaintiff and engaged in various "incidents ranging from threats of discipline based on false accusations to being singled out and excluded from trainings and award ceremonies and denied promotions" over "the course of a few years." Id. at 126. Even still, the hostile work environment allegations survived the motion to dismiss "not by much." Id. at 127.

Here, the one racial slur Davila alleges Beauchamp made was not said in his presence and allegedly occurred over a decade ago, and prior to Davila joining Beauchamp's unit. Moreover,

Davila admits that Beauchamp's efforts to terminate his detail and lower his performance review did not materialize, thus limiting their severity.

Accordingly, Davila does not allege conduct sufficiently offensive to create a hostile work environment.

### III. Further Amended Complaint

Prior to the finalization of this ruling, Davila requested leave to file yet another amendment to his complaint in order to supplement some claims and withdraw others. Mot. to Amend Compl., Jan. 18, 2023. The request is Davila's third since DHS filed its dispositive motion and arises two months after the Court held a hearing on that motion. Given the late stage of the request, the Court will deny leave to amend.

Even if the amendment was timely, the Court would still deny leave to file because the amendment would be futile. See Willoughby v. Potomac Elec. Power Co., 100 F.3d 999, 1003 (D.C. Cir. 1996). While the proposed amendment adds additional facts to support Davila's assertion that the District of Columbia is the proper venue for his wrongful termination claim and supplements his hostile work environment claim, those changes are inconsequential. As discussed above, the Court need not decide the venue issue because Davila failed to properly administratively exhaust his termination claim. Nor would Davila's additional allegations save his hostile work environment claim. The gist of the amendment is that Davila's recommendations were sometimes ignored and he was denied opportunities to host trainings and attend events. Proposed Am. Compl. ¶¶ 52–63, ECF No. 27-1. But, consistent with the discussion above, these allegations are work-related claims not severe or pervasive enough to support a hostile work environment claim. See Def.'s Opp'n to Proposed Am. Compl. at 3–6; see also, Wade, 780 F. Supp. 2d at 19.

Accordingly, the Court will deny Davila's motion for leave to amend his complaint.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [11] Defendant's Motion for Partial Summary Judgment is GRANTED and Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.  The Court hereby grants summary judgment for the Defendant as to Plaintiff's alleged non-selection and termination claims.  The Court dismisses Plaintiff's retaliation claims to the extent they are based on threats of lowering his performance review, being stared at, and being subject to closer supervision.  The Court also dismisses Plaintiff's hostile work environment claim.  Plaintiff's discrimination claim regarding the alleged reassignment of his duties may proceed, as may his retaliation claims related to the reassignment and threats of termination.  It is further

**ORDERED** that [16] Plaintiff's Motion to Deny or Defer Consideration of Summary Judgment is DENIED.  It is further

**ORDERED** that [22] Plaintiff's Motion for Leave to File First Amended Complaint is GRANTED.  It is further

**ORDERED** that [25] Plaintiff's Motion to Further Amend the Complaint is DENIED.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: February 17, 2023